UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No: 24-cr-10153-IT |
| | ) |
| ARIEL WIGGINS, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION</u>**

On September 12, 2024, the defendant, Ariel Wiggins, pled guilty to the Information, which charged him with engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) (Count One), pursuant to a plea agreement with the government. The defendant's sentencing hearing is scheduled for January 17, 2025.

The government submits the instant memorandum in support of its recommendation for 15 months of incarceration for the defendant, which is within the advisory guidelines range, followed by 3 years of supervised release. This recommendation reflects the seriousness of the offense, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

**I.      THE ADVISORY SENTENCING GUIDELINES**

Between June of 2021 and December of 2022, the defendant was engaged in the buying, manufacturing and selling of firearms and firearm parts in Massachusetts. All told, the defendants trafficked around 25 firearms, some of which were recovered during various law enforcement arrests and seizures. PSR ¶¶ 8-22. His base offense level is 12. PSR ¶ 29. The defendant receives a four-level enhancement because the offense involved at least 8 firearms. PSR ¶ 30. The defendant is entitled to a three-level acceptance of responsibility reduction. PSR ¶¶ 36-37. Calculating his criminal history category of level I, U.S. Probation has calculated that the advisory guideline range is 12 - 18 months. PSR ¶ 72.

1

The government recommends, in accordance with the plea agreement, that the Court sentence the defendant to 15 months of imprisonment, followed by 3 years of supervised release.

## II.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The factors set forth in 18 U.S.C. § 3553(a) assist the Court in determining a sentence that is sufficient, but not great than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR.

Consideration of the § 3553(a) factors demonstrates that a sentence of 15 months, followed by 3 years of supervised release, is the appropriate sentence in this case.

### a.  Nature of the Offense

The nature and circumstances of the defendant's gun trafficking justifies a significant sentence of 15 months, despite the defendant having a minimal prior criminal history. The threat of guns in modern society is well documented and grows more serious every day. Less well understood, but no less significant, is the fact that the harm caused by the defendant's criminal activity may not be felt for many years to come. This is because the data shows that the average time from the purchase of a new gun to the recovery of the gun at a crime scene ("time to crime")

in Massachusetts is *8.06 years*.[1] This data means that the illegal guns trafficked by the defendant will likely be used in the hands of criminals for the better part of the next decade.[2]

Simply by involving a firearm, crimes across the country become much greater in seriousness and harm. Data show that states with more guns have more deaths.[3] Available research demonstrates that the involvement of guns makes quarrels, robberies, domestic disputes, and other conflicts deadlier. Those engaged in violent crime in the United States are not more intent on killing compared to their counterparts in other nations, they merely have better access to powerful tools that make death a more likely outcome of an assault or conflict.[4] As a result, America has seven times as many firearm homicides as Canada, and nearly 19 times as many as France.[5] The rate of murder or manslaughter by firearm is the highest in the developed world. There were approximately 20,958 deaths as a result of a homicide involving a firearm in 2021. That is approximately 80.5% of all homicides for the year.[6]

More to the point of this investigation, most gang-related murders and felonies involve illegal guns, according to federal crime data.[7] Illegal guns circulating among high-risk networks

---

[1] *See ATF Firearms Trace Data for 2023*, available at: https://www.atf.gov/resource-center/firearms-trace-data-massachusetts-2023. The Massachusetts data was not an aberration, as the national average was 6.76 years. *Id.*

[2] Of course, several of the guns discussed in the PSR were recovered by the ATF and will remain off the street. Nevertheless, the true harmfulness of this offense can be seen in all the guns not recovered by law enforcement.

[3] German Lopez, VOX, *America's unique gun violence problem, explained in 16 maps and charts*, (August 16, 2021), available at: https://www.vox.com/policy-and-politics/2017/10/2/16399418/america-mass-shooting-gun-violence-statistics-charts

[4] David M. Hureau & Anthony A. Braga, *The Trade in Tools: The Market for Illicit Guns in High-Risk Networks*, CRIMINOLOGY, volume 56 issue 3, (July 18, 2018), available at: https://onlinelibrary.wiley.com/doi/full/10.1111/1745-9125.12187

[5] Katherine Leach-Kemon, Rebecca Sirull & Scott Glenn, *On gun violence, the United States is an outlier*, INSTITUTE FOR HEALTH METRICS AND EVALUATION, (October 31, 2023), available at: https://www.healthdata.org/news-events/insights-blog/acting-data/gun-violence-united-states-outlier

[6] America's gun culture in charts, BBC NEWS, (December 7, 2023), available at: https://www.bbc.com/news/world-us-canada-41488081

[7] *Gun Violence in America*, NATIONAL INSTITUTE OF JUSTICE, (February 26, 2019), available at: https://nij.ojp.gov/topics/articles/gun-violence-america

present a threat to the security and well-being of urban neighborhoods. The supply of illegal guns to those embedded in high-risk networks is a critical mechanism in shaping rates of deadly violence in American cities.[8] The negative impact of guns on society goes beyond death and disability. When an individual is victimized by or exposed to gun violence, it increases the likelihood that they will be victimized again or resort to gun violence themselves. [9] Gun homicides also can have severe economic consequences on communities. Residents of communities impacted by gun violence experience lower property values, fewer business startups, and loss of jobs. [10] One study estimated that surges in gun homicides slowed home value appreciation by four percent relative to communities which did not experience a surge in violence. [11] There are further economic consequences to gunshot injuries, including the immediate hospital costs as well as the lifetime medical care costs including readmission(s) to the hospital and nursing care. Gun violence also financially burdens survivors by diminishing wages and productivity and often results in a mental or physical disability. One study estimates the overall societal cost for each gun-related assault at $1.2 million. [12]

The defendant's offense here was not limited to the approximate two dozen guns he manufactured and sold, as he explained in his interview with investigators. Nor did it stop with the various Glock and Sig Sauer pistols, privately made firearms ("PMF" or "ghost gun"), and Kel-tec Sub2000 rifle recovered from the defendant or other involved individuals in this investigation. [13]

---

[8] *Supra* note 4.

[9] *A Nation of Survivors: The Toll of Gun Violence in America*, EVERYTOWN FOR GUN SAFETY, (Updated February 3, 2022), *available at*: https://everytownresearch.org/reports/nationofsurvivors/

[10] *Id.*

[11] *Id.*

[12] *Id.*

In addition, during a search in December, 2022 of the defendant's residence, investigators located;

- a large tan rifle bag containing a Norinco 7.62 rifle;
- numerous rounds of 7.62 caliber ammunition;
- additional 9mm ammunition;
- assorted gun parts;
- marijuana and marijuana baggies; and
- 3 high-capacity firearm magazines.

The Defendant later admitted to investigators during an interview of his involvement in not just the distribution - but also the manufacturing - of firearms. During this interview the defendant admitted that his intention was to assemble and sell firearms for a profit. Additionally, he stated that he first starting doing this right before he got his LTC, which ATF confirmed he received on June 28, 2021. He further stated that he manufactured and sold approximately 25 firearms, that he built "Glocks" because that is what people prefer.

At one point during the conversation with investigators, the defendant stated that;

> "…I knew I was doing something illegal and it was wrong, I just thought about a couple of dollars…"

In sum, the defendant's conduct here created a significant danger to the community, from the buying, making of these firearms and ammunition to be sold on the street, to the reckless storage and handling of these items. All of these factors support the significant sentence recommended by the government.

---

[13] Between October of 2021 and September of 2022, the defendant and another individual that the defendant admitted he sold guns to were stopped by police officers on at least 4 occasions, and during those 4 incidents, 8 separate firearms were discovered by law enforcement.

### b. Characteristics of the Defendant

Another important aspect of this sentencing is the relevant characteristics of the defendant. *See* 18 U.S.C. 3553 (a)(1). The defendant is 24 years old. PSR ¶ 51. The government recognizes that the defendant has strong family support, and that has been highlighted in this case. The government also acknowledges certain points that are reflected in the PSR. The defendant is a young man, who has engaged in several employments throughout most of his adult life. PSR ¶¶ 66-67. He certainly has the potential to be a law-abiding member of society, after taking responsibility for his offenses, which he has begun to do by pleading guilty. The government's recommendation takes these attributes into account.

However, the government also notes that the defendant in this case sold firearms on the street to known Boston gang associates. Furthermore, while this investigation has been pending, the defendant has had repeated run-ins with the police, and has been charged with crimes several times as a result. On docket 2307CR001341 in the Dorchester District Court, the defendant was arraigned in May of 2023 on charges of receiving a stolen motor vehicle. That case has since been dismissed. On docket 2351CR001431 in the Waltham District Court, the defendant was arraigned in December of 2023 on charges of leaving the scene of property damage. That case was also recently dismissed, on January 8, 2025.

Most recently, on November 9, 2024, the defendant was arrested for reckless driving in Providence, RI. The defendant subsequently told his probation officer that he panicked, made the poor decision to flee and then crashed his car and was placed under arrest. This information was corroborated by the report issued by the Providence Police Department, which stated that police officers attempted to pull the defendant over after they observed two vehicles following each other at a high rate of speed. The defendant failed to stop and crashed into a barrier. A police officer ordered the defendant out of car, but he continued to try and drive away and only

stopped when the police officer pulled out his gun. Charges have been filed as a result of the defendant's recent actions in Rhode Island.

A sentence of 15 months imprisonment, at the low end of the guidelines, with 3 years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a). Even after serving a 15-month sentence, the defendant will still be a very young man with a lot of potential, which the structure of supervised release will help him to achieve.

### c. Specific and General Deterrence

A significant sentence of imprisonment is warranted to deter others from becoming involved in illegal firearms trafficking. The dangers of this conduct is difficult to overstate. Individuals tempted to engage in this type of gun distribution must understand that any involvement will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others who might otherwise consider profiting from gun dealing that the money is not worth the punishment. Further, general deterrence must be considered for any other individuals similar to the defendant's status, that dealing in firearms is not a gainful way of life.

This is a very serious issue in Massachusetts, a state with very strong gun control laws, where the illegal gun trade still results in a steady supply of illegal guns in urban cities in this state. This is highlighted by the dangers discussed above and the need to punish those involved in providing such dangerous weapons to criminals. For example, in 2023 ATF traced 3,487 guns seized by law enforcement statewide. [14] While each gun trafficked by the defendant represents a small percentage of that total, each one carried great potential for harm, as discussed above.

The scourge of gun violence in Boston is also well-documented, despite the recent successes that law enforcement have had in their attempt to prevent these atrocious acts of

---

[14] *See* ATF Massachusetts Data Source: Firearms Tracing System, January 1, 2023 - December 31, 2023, available at: https://www.atf.gov/resource-center/firearms-trace-data-massachusetts-2023.

violence. During 2023, Boston recorded 35 fatal shootings and 144 non-fatal shootings.[15] Any sentence in a case such as this must take into account the harms that the proliferation of illegal firearms causes to the community, and the danger that these guns pose to the community right now.

Considerations of specific deterrence also support imposition of substantial incarceration. The sentence recommended by the government is hopefully sufficient to deter the defendant from resuming a life of gun dealing and that any continued criminal behavior will be met with serious consequences.

### d.  Supervised Release Conditions

The government also requests a term of 36 months of supervised release.  In addition to the standard conditions, the government requests that the Court impose the special conditions set forth in the recommendations made by U.S. Probation, and additionally that the defendant be prohibited from purchasing or possessing any firearms, firearm-related equipment or parts, as well as that the defendant be provided with any available vocational training while in prison and that he take advantage of any such classes and/or training while on supervised release.

---

[15] *See* Shootings in Boston reach historic low in 2023: 'It takes a lot of work' *available at*: https://www.nbcboston.com/news/local/shootings-in-boston-reach-historic-low-in-2023-it-takes-a-lot-of-work/3242768/  (January 11, 2024).

**III.   CONCLUSION**

For the foregoing reasons, those contained in the PSR, and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 15 months' imprisonment;

- a fine within the Guidelines sentencing range, as calculated by the Court, unless the Court finds that the defendant is not able to pay a fine;

- a term of 36 months' supervised release with the conditions referenced above and recommended by probation; and

- a special assessment of $100.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   /s/ John T. Dawley, Jr.
      John T. Dawley, Jr.
      Assistant U.S. Attorney

Dated: January 31, 2025

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the foregoing upon all counsel of record by electronic filing notice.

/s/ John T. Dawley, Jr.
Assistant U.S. Attorney

Dated: January 31, 2025